UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GIANNA S., <br>     Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of the Social Security <br> Administration, <br>     Defendant. | C.A. No. 25-100-PAS |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

At the age of just twenty-three, in December 2022, Plaintiff Gianna S., a high school graduate who had previous work experience as a cashier, filed her second set of disability applications[1] for Supplemental Security Income ("SSI"),[2] Disability Insurance Benefits ("DIB")[3] and Child Disability Insurance Benefits ("CDBR")[4] under the Social Security Act.  Tr. 14, 20. Plaintiff alleges that she has been disabled since October 1, 2020, when she was twenty-one years old based on mental impairments: posttraumatic stress disorder ("PTSD"), anxiety, depression, and bipolar disorder.  Tr. 178.  After these claims were administratively denied – initially and on reconsideration – an administrative law judge ("ALJ") found that these and other mental impairments (panic disorder, attention deficit hyperactivity disorder ("ADHD") and substance use disorder) are severe, but also found that at all relevant times Plaintiff retained the

---

[1] The first set had been denied at the reconsideration phase in June 2022.

[2] The period in issue for Plaintiff's SSI application is from the date of application, December 8, 2022, to present.

[3] The period in issue for Plaintiff's DIB application ended with the date last insured, June 30, 2021.

[4] The period in issue for Plaintiff's CDBR application ended on her twenty-second birthday, February 2, 2021.

RFC[5] to perform work based on simple instructions with no more than frequent interactions with coworkers and supervisors, no interactions with the public and only occasional changes in a routine work setting. Tr. 20, 22. The ALJ relied not only on the evidence of record and the mostly persuasive findings of the non-examining experts, but also on the lack of any opinion on functioning from any examining or treating source. Tr. 24. At Step Five, in reliance on the testimony of a vocational expert ("VE") that there is work ("medium, SVP 2") that an individual with this RFC can perform, the ALJ found that Plaintiff has not been disabled at any relevant time. Tr. 26-27.

Now pending before the Court is Plaintiff's motion to reverse, and remand for further proceedings, the decision of the Commissioner denying her SSI/DIB/CDBR applications. ECF No. 10. Defendant has filed a counter motion for an order affirming the Commissioner's decision. ECF No. 14. Both motions are before me on consent pursuant to 28 U.S.C. § 636(c).

**I.      Standard of Review**

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g), 1383(c)(3); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). It is more than a scintilla and must do more than merely create a suspicion of

---

[5] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

the existence of a fact. Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam). Further, while "'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not." Clark v. Kijakazi, 673 F. Supp. 3d 119, 122 (D.N.H. 2023) (quoting Purdy, 887 F.3d at 13); see Biestek, 587 U.S. at 103. The determination of substantiality is based on an evaluation of the record as a whole. Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam); Lizotte v. Sec'y of Health & Hum. Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015).

II.     **Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 1382c(a)(3); 20 C.F.R. § 404.1505.[6]  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-06, 1509-11.

### A.      The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520(a).  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  Id. § 404.1520(a)(4)(i).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  Id. § 404.1520(a)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  Id. § 404.1520(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Id. § 404.1520(a)(4)(iv).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  Id. § 404.1520(a)(4)(v).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); see Ulitsch v. U.S. Soc. Sec. Admin., No.

---

[6] As relevant here, the Social Security Administration has promulgated identical sets of regulations governing eligibility for CDBR, DIB and SSI.  See McDonald v. Sec'y of Health & Hum. Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For simplicity, I cite only to one.

24-cv-00074-PB, 2025 WL 691054, at *4 (D.N.H. Mar. 4, 2025) ("claimant bears the burden at the first four steps to prove by a preponderance of the evidence that they are disabled") (citing Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001)).

### B.     Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record. See 20 C.F.R. § 404.1520c. The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate. Id. § 404.1520c(b)(2); Elizabeth V. v. O'Malley, C.A. No. 23-00459-WES, 2024 WL 1460354, at *3 (D.R.I. Apr. 4, 2024), adopted by text order (D.R.I. Apr. 19, 2024). Supportability refers to the quantum of relevant objective medical evidence and supporting explanations presented by a medical source to support the medical opinion or prior administrative medical findings; consistency refers to the degree to which a medical opinion or prior administrative medical finding is consistent with the evidence from other medical sources and nonmedical sources in the claim. 20 C.F.R. § 404.1520c(c)(1)-(2). A medical opinion lacking adequate supporting evidence, or one that is inconsistent with evidence from other sources, is not persuasive regardless of who made the medical opinion. See Amanda B. v. Kijakazi, C.A. No. 21-308MSM, 2022 WL 3025752, at *2 (D.R.I. Aug. 1, 2022), adopted, 2022 WL 18910865 (D.R.I. Nov. 7, 2022).

In considering whether, and to what extent, to rely on medical/expert opinions, the ALJ may pick and choose among portions of them, finding parts persuasive and other parts less so. Samantha B. v. Bisignano, C.A. No. 25-00004MSM, 2025 WL 2992378, at *6 (D.R.I. Oct. 24, 2025); Smith v. Colvin, No. 2:14-cv-429-JHR, 2015 WL 4391420, at *5 (D. Me. July 15, 2015).

Nevertheless, if a portion of an expert opinion is rejected as less persuasive, the ALJ must state the reason, which must be based on substantial evidence of record. See 20 C.F.R. § 404.1520c(b). The ALJ's duty to "articulate how [he] considered the medical opinions and prior administrative medical findings" is not onerous. 20 C.F.R. § 404.1520c(a); see Warnell v. O'Malley, 97 F.4th 1050, 1053 (7th Cir. 2024). In assessing the ALJ's articulation, the Court must remain mindful that its role is not to reweigh the evidence, even if it might have come to a different conclusion. See Thomas P., 2022 WL 92651, at *8.

**III.  Analysis**

Plaintiff has made four arguments challenging the ALJ's decision.

First, despite Plaintiff's status as a high school graduate with no diagnosed cognitive impairments who was found by opining experts to have intellectual functioning in the normal range, e.g., Tr. 120-21 (ability to understand and remember detailed instructions moderately limited); Tr. 771, 774 (Dr. Unger opines to "low average" intellectual functioning); Tr. 1961 (Plaintiff made honor roll), Plaintiff challenges the ALJ's Step Five finding (in reliance on the VE's testimony) that Plaintiff can perform jobs that are classified as GED Level 2.[7] ECF No. 10 at 5-7. With no factual foundation for the argument and having waived her right to question the VE regarding the issue, Plaintiff contends that the VE's testimony categorically conflicts with the ALJ's finding that Plaintiff is limited to understanding, remembering and carrying out simple instructions. Id. at 6-7. To legally support the argument, Plaintiff relies on older decisions from the District of Maine that are no longer followed by that court. See Sharon W. v. Kijakazi, No.

---

[7] The Dictionary of Occupational Titles ("DOT") describes the requirements for each listed occupation, including the necessary General Educational Development ("GED") level, which is based on the education (formal or informal) required for the job. Occupations in the DOT are rated on a scale of 1 (lowest) to 6 (highest). Sharon W. v. Kijakazi, No. 2:21-cv-00287-NT, 2022 WL 2751645, at *4 (D. Me. July 14, 2022), adopted, 2022 WL 3042984 (D. Me. Aug. 1, 2022).

2:21-cv-00287-NT, 2022 WL 2751645, at *4 (D. Me. July 14, 2022) ("[c]ourt has repeatedly found no conflict with the GED reasoning level of the jobs here and the RFC limitation to simple instructions"), adopted, 2022 WL 3042984 (D. Me. Aug. 1, 2022).

Plaintiff presents nothing to explain her failure to raise this issue during the ALJ's hearing; therefore, she forfeits this challenge because she did not make a timely objection when she had the opportunity. Katheryn H. v. King, C.A. No. 24-cv-253-JJM-LDA, 2025 WL 521137, at *5 (D.R.I. Feb. 18, 2025). More troubling, Plaintiff has failed to cite to this Court its own repeated holdings rejecting this argument.[8] See Christine L. v. Colvin, C.A. No. 24-00145-LDA, 2024 WL 5118440, at *7 (D.R.I. Dec. 16, 2024) ("case law is clear (both in this District and elsewhere) that jobs with a GED reasoning level of 2 or 3 are consistent with an RFC limitation to simple and unskilled tasks"); Steven A. v. O'Malley, C.A. No. 23-544-WES, 2024 WL 4344865, at *7-8 (D.R.I. Sept. 30, 2024) (same), adopted by text order (D.R.I. Oct. 18, 2024); William S. v. O'Malley, C.A. No. 24-00143-LDA, 2024 WL 4123488, at *7 (D.R.I. Sept. 9, 2024) (same); Su Y. v. O'Malley, C.A. No. 23-CV-541-JJM-PAS, 2024 WL 3385200, at *3 (July 11, 2024) (same); Ryan Y. v. O'Malley, C.A. No. 23-540-PAS, 2024 WL 3329755, at *8 (D.R.I. July 8, 2024) (same). Plaintiff has also ignored a strongly worded caution in one of this Court's most recent on-point cases, Emily C. v. Dudek, C.A. No. 24-00324-LDA, 2025 WL 1263715 (D.R.I. May 1, 2025), that a repeat of this argument without citation to adverse authority could be potentially sanctionable:

> The Court cautions Attorney Gannon to be mindful of his obligation of candor toward the tribunal under Rhode Island Rules of Professional Conduct Rule 3.3(a)(2) which applies in this Court via LR Gen 208 and generally requires

---

[8] Not reported but pertinent is the Court's decision in Samantha D. v. Bisignano, C.A. No. 25-cv-156-MRD-PAS, ECF No. 11 (D.R.I. Oct. 30, 2025), in which the Court faced an argument almost identical to the one presented here and rejected it as a preliminary matter based on waiver. Id. at 1 n.1. In Samantha D., the Court specifically noted that Plaintiff's counsel had previously been admonished for presenting arguments that the Court has rejected without citation to adverse legal authority and reminded him of his ethical duty.

7

>counsel to disclose adverse legal authority to the Court known by him and not disclosed by opposing counsel.

Id. at *7 n.1. Further, in Emily C., the Court specifically rejected one of the cases on which Plaintiff now relies (Spearing v. Astrue, No. 07-138-B-W, 2008 WL 2593790, at *3 (D. Me. June 30, 2008), adopted, 2008 WL 2858813 (D. Me. July 22, 2008)) because it "is no longer followed in District of Maine." 2025 WL 1263715, at *6 (citing Sharon W., 2022 WL 2751645 at *4). Yet although Plaintiff cites Spearing, she does not mention the subsequent decisions rejecting it.

With no evidence anywhere in the record before me to support the argument that Plaintiff was so obviously impaired as to be incapable of jobs that require GED Level 2 reasoning capacity, as well as with a waiver of the issue at the ALJ hearing, the Court rejects this argument. Beyond the scope of this decision is whether the assertion of this argument in this case without mention of the adverse legal authorities noted above, after so clear a caution by this Court in Emily, will result in the Court's consideration of sanctions pursuant to DRI LR Gen 210(b).

Second, despite the ALJ's careful consideration of Plaintiff's subjective claim that she is not capable of full-time work, which he rejected in reliance on the evidence, including the examining source finding that Plaintiff's RFC permits her to "finish simple 1-3 step familiar tasks over the course of a normal 8/5/40 work routine," Tr. 123, Plaintiff contends that the ALJ erred by failing to consider her ability to complete a normal workday/workweek. ECF No. 10 at 7-9. Relatedly, Plaintiff presents an undeveloped argument attacking the ALJ's finding that Plaintiff's subjective statements (presumably those regarding her ability to sustain full-time work) were not entirely consistent with evidence because the ALJ failed to link the finding to specific contradictory evidence.

Factually, this argument fails because the premise for it is not accurate. That is, the ALJ's RFC, including his credibility determination, is based on extensive evidence that is set out in the decision, not only the expert finding that she is capable of sustaining a normal 8/5/40 work routine, but also Plaintiff's stability once substance abuse was in remission, her intact mental status examinations and her activities (such as going to the gym multiple times per week, going to the beach, attending family events and going out to eat with family). Tr. 23-24. Thus, the ALJ's determination to discount Plaintiff's subjective statement that she cannot sustain full-time work is not erroneous because it is well-supported by substantial evidence.

Legally this argument also does not fare well. Echoing the many cases recently issued by this Court (none of which are cited in Plaintiff's brief), the Court finds that this argument fails because the ALJ's reliance on the expert findings that Plaintiff could sustain a normal work schedule "necessarily means that materially excessive off-task time and absenteeism were both considered and not found." Austin B. v. O'Malley, C.A. No. 23-519-PAS, 2024 WL 3329754, at *3 (D.R.I. July 8, 2024); see Marissa L. v. Bisignano, C.A. No. 24-323MRD, 2025 WL 2463218, at *6 (D.R.I. Aug. 26, 2025), adopted by text order (D.R.I. Sept. 24, 2025), Heather D. v. Kijakazi, C.A. No. 23-122-LDA, 2023 WL 7385107, at *7 (D.R.I. Nov. 8, 2023). Accordingly, the Court finds no error of law in the ALJ's determination that Plaintiff can sustain full-time work.

Third, Plaintiff argues that the ALJ erred because he failed to account for the evidence of headaches in the record, in particular because he failed to perform a Step-Three epilepsy listing analysis of headaches. ECF No. 10 at 9-11. Despite her failure to include or even mention headaches (or epilepsy or seizures) as an alleged impairment or symptom on application, in her function report or during her testimony, Plaintiff buttresses this argument with her claim that the

9

record has "repeated documentation of [Plaintiff's] headaches." Id. at 10. Her brief lists five pages – Tr. 616, 621, 642, 1153 and 1396 – in support of that proposition. Id. at 10-11.

The Court has carefully reviewed all five pages and finds that none supports the proposition. Troublingly, two of the documents Plaintiff cites (Tr. 616-17 and Tr. 642-44)[9] say that Plaintiff had "no" or was "[n]egative" for headaches. One document reflects that headache was one of the symptoms (along with congestion and cough) of a short-lived upper respiratory tract infection, Tr. 621-23, while the last two have no reference to headaches at all, Tr. 1153, 1396. Despite this glaring lack of support, to afford Plaintiff the benefit of the Court's full consideration of the argument, the Court performed a complete review of the entirety of this almost three-thousand-page record. Based on the review, the Court finds that there is no evidence anywhere in this record to support Plaintiff's argument of error by the ALJ in ignoring work-impacting headaches.[10]

Four, Plaintiff argues that the ALJ's well-supported rejection of one aspect of the otherwise persuasive findings of the non-examining psychologists ("Cl[aimant] may require special supervision as they first learn a new task due to limited work experience")[11] is tainted by

---

[9] Plaintiff cited to Tr. 616 and 642, neither of which makes any reference to headaches. Mindful that behind this obvious mis-citation by the attorney who wrote this brief is a Social Security claimant, the Court scoured the adjacent pages and discovered that these medical encounters include the following notation: "[p]ertinent negatives include no . . . headaches, Tr. 617, and "[n]egative for . . . headaches," Tr. 644. Similarly, there is no reference to headaches on the third cited page, Tr. 621, but "headache" is mentioned on the next page, albeit as a symptom associated with an upper respiratory tract infection. Tr. 622. The Court's search of pages adjacent to Plaintiff's last two cited pages – Tr. 1153 and 1396 – turned up no reference to headaches at all.

[10] The Court is troubled by Plaintiff's counsel's persistence in repeating the argument that a passing mention in a treating record of headache requires remand for a Listing 11.02 analysis of whether there is material evidence of generalized tonic-clonic seizures or dyscognitive seizures. The same argument has been rejected by this Court and other courts, yet Plaintiff has failed to cite the adverse authority. E.g., Marissa L., 2025 WL 2463218, at *5 & nn.4-6 (citing cases).

[11] The initial-phase non-examining expert opined that Plaintiff "may" need "special supervision while learning a new task," but also opined in another portion of the same set of findings that Plaintiff is "not significantly limited" in her "ability to sustain an ordinary routine without special supervision," as well as that she is moderately limited in the ability to "accept instructions and respond appropriately to criticism from supervisors." Tr. 84-86. On reconsideration, the non-examining expert similarly opined that Plaintiff "may" need "special supervision while

error requiring remand. As laid out in his decision, the ALJ appropriately based this determination on substantial evidence, including the reconsideration expert's findings, as well as the evidence of Plaintiff's normal intellectual functioning, intact mental status examinations, her activities and her prior work experience. Tr. 25. Importantly, both the initial phase and nonexamining experts also found that, at all relevant times, Plaintiff is "not significantly limited" in her "ability to sustain an ordinary routine without special supervision." See n.11 *supra*. The Court finds no factual error in the ALJ's approach to the opinion evidence.

Plaintiff's argument also rests on the legal proposition that an ALJ cannot treat parts of an expert's opinion as persuasive, while finding other aspects of the same opinion to be unpersuasive. Relatedly, Plaintiff contends that, with no expert whose opinion aligns with the ALJ's RFC, the case must be remanded because the ALJ was improperly interpreting raw medical data. These arguments fail because the law clearly permits an ALJ to piece together the relevant medical facts from the findings and opinions of multiple physicians. See Evangelista v. Sec'y of Health & Hum. Servs., 826 F.2d 136, 144 (1st Cir. 1987) (to require a "super-evaluator," that is, "a single physician who gives the factfinder an overview of the entire case – is unsupported by the statutory scheme, or by the caselaw, or by common sense, for that matter"). The Court finds no legal error in the ALJ's approach.

### IV.  Conclusion

Having reviewed the entirety of this extensive record, mindful that it is the Court's "job . . . to review the record and determine whether a reasonable mind . . . could accept it as adequate

---

learning a new task," for the portion of the period in issue prior to June 3, 2021, but omitted that limitation from the opinion applicable to the later period. Tr. 122. The reconsideration expert also opined (regarding all relevant times) that Plaintiff is "not significantly limited" in her "ability to sustain an ordinary routine without special supervision," as well as that she is moderately limited in the ability to "accept instructions and respond appropriately to criticism from supervisors." Tr 123-24.

to support [the ALJ's] conclusion," the Court finds that remand for further proceedings is not appropriate and affirms the ALJ's well-supported and legally correct decision.  Burton v. Kijakazi, Civil Action No. 21-cv-11916-ADB, 2023 WL 2354901, at *8 (D. Mass. Mar. 3, 2023) (internal quotation marks and citation omitted).  Based on the foregoing, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) is DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 14) is GRANTED.  The Clerk is directed to enter judgment in favor of the Commissioner.

/s/ Patricia A. Sullivan  
PATRICIA A. SULLIVAN  
United States Magistrate Judge  
December 1, 2025